<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

FENTON J. CARSTARPHEN,

                 Petitioner,

                 v.

BRUCE DAVIS,

                 Respondent.

Civil Action No. 24-8329 (KMW)

**OPINION**

**WILLIAMS**, District Judge:

This matter comes before the Court on Petitioner Fenton J. Carstarphen's petition for a writ of habeas corpus. (ECF No. 1.) Also before the Court is Petitioner's motion requesting a stay of this matter so that he can return to state court to attempt to exhaust several claims he failed to raise on appeal from the denial of his post conviction relief petition in state court. (ECF No. 10.) Following an order to answer, Respondent filed a response to the petition. (ECF No. 17.) Petitioner filed his stay motion in lieu of a reply. (ECF No. 10.) For the following reasons, Petitioner's habeas petition is denied, and Petitioner's motion seeking a stay is also denied.

**I.    BACKGROUND**

In the opinion affirming Petitioner's conviction and sentence, the Superior Court of New Jersey Appellate Division summarized the factual background of this matter as follows:

> [Petitioner] brutally attacked his estranged wife (the victim) almost killing her. Shortly after the [Petitioner's] indictment [on charges of burglary, attempted murder, aggravated assault, and weapon related charges], the State moved to admit evidence of "other acts of

domestic violence committed by [Petitioner] against the victim pursuant to N.J.R.E. 404(b)." The judge allowed the State to admit into evidence a sanitized statement [Petitioner] made to an officer and permitted testimony regarding the victim's tumultuous relationship with [Petitioner] as intrinsic evidence[, b]ut the judge found statements made by [Petitioner] to a different officer and testimony regarding [Petitioner]'s prior physical assault of the victim inadmissible under N.J.R.E. 404(b).

Moments before jury selection, [Petitioner] advised the judge – for the first time – that he wanted to represent himself. Up to this point, a public defender represented [Petitioner]. The State objected specifically to [Petitioner] cross-examining the victim himself due to an active final restraining order (FRO). But the State had no objection to [Petitioner] proceeding pro se, so long as his public defender cross-examined the victim (using questions proposed by [Petitioner] if need be).

After making the proper inquiries, the judge allowed [Petitioner] to represent himself, but in a hybrid fashion. He could represent himself in all aspects of the trial, except the cross-examination of the victim. On that point, the judge determined that [Petitioner]'s public defender would cross-examine the victim. The judge allowed [Petitioner] to retain private counsel, if he could afford to do so, but otherwise the judge stated that his public defender would act as standby counsel. Unhappy with the judge's decision to keep the public defender as standby counsel, [Petitioner] then left the courtroom and refused to participate in the trial, and returned to jail.

After jury selection and opening statements, the public defender moved for a mistrial, arguing the judge denied [Petitioner]'s constitutional right to represent himself. The judge denied the motion and concluded that [Petitioner] was "attempting to exploit the system." The judge said he refused to allow [Petitioner] to "dictate by gamesmanship" how the trial was going to proceed. The trial occurred in [Petitioner]'s absence.

. . . .[T]he following facts [were presented] at the trial, which demonstrate overwhelming proof of guilt. On the morning of December 11, 2014, the victim opened the door to the mudroom attached to her house when she unexpectedly saw [Petitioner] standing there with a meat cleaver in his hand. He said to her, "[o]h, so you want a divorce?" The victim attempted to go to the back door, but she felt "heavy blows" to the back of her head, and fell to the ground. She was able to get outside the backyard where she screamed for help. As the attack continued outside, [Petitioner] put

2

the meat [cleaver] in his pocket and took out a folding knife and cut the victim's thigh and attempted to cut her calf. [Petitioner] told the victim they had to go back inside the house; the victim said she could not move, and as [Petitioner] went toward her, pretending to help her, he reached down and slit her throat and continued up her face, cutting her lip, nose, and across her left eye.

The victim's neighbor heard the screams, saw the attack, and called 9-1-1. Police arrived and found [Petitioner] standing over the victim, who was yelling for help with her hands up and blood coming down her face. The police detained [Petitioner] and found the meat cleaver and folding knife. They found a glove and wet pajamas near where the victim was on the ground; the wet pajamas had the odor of lighter fluid. When the police entered the victim's house, they detected the odor of flammable gas, and they noticed it was most potent in the mudroom.

The victim testified at trial. She testified that [Petitioner] was argumentative, and when she previously asked him to leave her home, he told her, "If I'm not living . . . here . . . I'll burn this [expletive] down." She said that she broke off the relationship and he moved out. She testified that she then filed for divorce, but that he continued to call her and would "pop up" at her work.

A trauma surgeon, who treated the victim for the injuries she sustained in the attack, testified that she had "multiple lacerations of her face, neck, arm, one on her abdomen, several on her thigh, several on her head, left arm . . . [and] a fracture . . . in her left arm . . . [and] amputation of part of her finger on her left hand." The victim stayed at the hospital for four days, during which she required staples to the injuries on her head, two surgeries, and several blood transfusions.

A forensic scientist from the New Jersey State Police Office of Forensic Science also testified. He examined DNA found on various items recovered from the victim's home and backyard. He found [Petitioner]'s DNA on a glove found at the scene, and on the knife blade and handle.

The jury found [Petitioner] guilty on all counts.[] After the appropriate mergers, the judge sentenced [Petitioner] to an aggregate prison term of fifty years[.]

(ECF No. 7-19 at 1-6.)

## II.  LEGAL STANDARD

Under 28 U.S.C. § 2254(a), the district court "shall entertain an application for a writ of habeas corpus [o]n behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A habeas petitioner has the burden of establishing his entitlement to relief for each claim presented in his petition based upon the record that was before the state court. *See Eley v. Erickson*, 712 F.3d 837, 846-47 (3d Cir. 2013). Under the statute, as amended by the Anti-Terrorism and Effective Death Penalty Act, 28 U.S.C. § 2244 ("AEDPA"), district courts are required to give great deference to the determinations of the state trial and appellate courts. *See Renico v. Lett*, 559 U.S. 766, 772-73 (2010).

Where a claim has been adjudicated on the merits by the state courts, the district court shall not grant an application for a writ of habeas corpus unless the state court adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2). Federal law is clearly established for these purposes where it is clearly expressed in "only the holdings, as opposed to the dicta[,]" of the opinions of the United States Supreme Court. *See Woods v. Donald*, 575 U.S. 312, 316 (2015). "When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Id.* Where a petitioner challenges an allegedly erroneous factual determination of the state courts, "a determination of a factual issue made by a State court shall be presumed to be correct [and the]

4

applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

### III. DISCUSSION

#### A. Petitioner's self-representation claim

Petitioner first argues that the trial court erred in not allowing him to represent himself in all aspects of his trial and in requiring him to cross-examine the victim through standby counsel. The Appellate Division rejected this claim on the merits in direct appeal, finding that the right to self-representation is not absolute, the trial judge fairly ruled in permitting Petitioner to represent himself despite the late hour of his request to proceed pro se while requiring him to question the victim through standby counsel, and that this hybrid representation did not impugn Petitioner's right to self representation because Petitioner was still permitted to direct the cross-examination, he merely had to have his standby counsel actually speak to and ask the questions of the victim in light of the victim's restraining order and the history of the two. (ECF No. 7-19 at 10-12.) The Appellate Division further found that this did not impugn Petitioner's confrontation clause rights as he was still able to put the victim's testimony to the test, albeit using counsel as a conduit for his questions. (*Id.*)

The Appellate Division's ruling was neither contrary to nor an unreasonable application of federal law. In *Faretta v. California*, the Supreme Court held that "a defendant in a state criminal trial has a constitutional right to proceed without counsel when he voluntarily and intelligently elects to do so." 422 U.S. 806, 807 (1975). An improper denial of the right to self-representation is not subject to harmless error analysis and will warrant the reversal of a conviction. *See McKaskle v. Wiggins*, 465 U.S. 168, 177 n. 8 (1984). That said, the right to self-representation is not absolute, *see Indiana v. Edwards*, 554 U.S. 164, 171 (2008), and a state court may appoint

5

standby counsel who need not remain silent and inactive so long as the defendant does not ask for aid. *McKaskle*, 465 U.S. at 176-77. "In determining whether a defendant's *Faretta* rights have been respected, the primary focus must be on whether the defendant had a fair chance to present his case in his own way." *Id.* at 177. Thus, while a defendant is "entitled to preserve actual control over the case he chooses to present to the jury," and standby counsel's involvement must not be seen to erode the defendant's role in the eyes of the jury, *Faretta* and a defendant's right to self-representation do not serve as a bar to standby counsel's involvement where necessary, and the right to self-representation is not impugned where standby counsel is appointed to guide a defendant through court rules, evidentiary obstacles, or compliance with court protocol. *Id.* at 177-184. Thus, even during a criminal trial, the "government's interest in ensuring the integrity and efficiency of the trial at times outweighs the defendant's interest in acting as his own lawyer." *Martinez v. Ct. of Appeal of Cal.*, 528 U.S. 152, 162 (2000). A state court may therefore appoint standby counsel and permit his involvement in a trial, even over the defendant's objections, so long as the participation does not "seriously undermin[e]" the "appearance before the jury that the defendant is representing himself." *Id.*

Here, despite the late hour of his request, the trial judge conducted the required *Faretta* colloquy, and granted Petitioner's request to represent himself, placing only one restriction upon that self-representation – that Petitioner use standby counsel as a conduit for cross-examining the victim in light of their history and the restraining order against him. It was made clear that Petitioner was still entitled to control the course of that cross-examination, and could himself determine what questions were asked and was not required to grant standby counsel complete control over his ability to question the victim. This requirement was, at most, a slight imposition upon Petitioner's self-representation rights, and still left Petitioner completely in control over his defense and the course to be taken at trial, and indeed left him in control over the questioning of

6

the victim, albeit with another asking the questions. This requirement, in light of the history of Petitioner and the victim and the nature of the underlying events, would not seriously undermine Petitioner's right to self-representation, nor substantially erode the appearance that Petitioner was in control over his own defense in the eyes of the jury. The trial court's decision, and the Appellate Division's upholding of that decision, was therefore a reasonable application of *Faretta* and its progeny, and thus is insufficient to warrant habeas relief. Ultimately, it was Petitioner himself, by refusing to participate in the trial after the trial court's ruling, who chose to put an end to his self-representation.

### B. Petitioner's evidentiary claims

Petitioner next argues that the trial court erred in admitting evidence of Petitioner's prior threats and interactions with the victim as intrinsic evidence. Petitioner's main contention is that this evidence was instead other wrongs evidence which should have been subject to analysis under N.J.R.E. 404(b). The Appellate Division rejected this claim on the merits, finding that the evidence was properly admitted under state law, and that Petitioner in any event suffered no prejudice in light of the overwhelming evidence of his guilt produced at trial.

Because "[t]he Due Process Clause does not permit the federal courts to engage in a finely-tuned review of the wisdom of state evidentiary rules," *see Marshall v. Lonberger*, 459 U.S. 422, 438 n. 6 (1983), claims challenging the admissibility of evidence are normally considered questions of state law which are not cognizable in habeas corpus. *See Keller v. Larkins*, 251 F.3d 408, 416 n. 2 (3d Cir. 2001) ("A federal habeas court . . . cannot decide whether the evidence in question was properly allowed under the state law of evidence"); s*ee also Estelle v. McGuire*, 502 U.S. 62, 67-70 (1991); *Wilson v. Vaughn*, 533 F.3d 208, 213-14 (3d Cir. 2008), *cert. denied*, 556 U.S. 1170 (2009). Therefore, a habeas petitioner may raise a habeas claim based on a state law evidentiary ruling only where he can show that the admission of the evidence at issue denied him

7

Due Process under the Fourteenth Amendment by depriving him of the "fundamental elements of fairness in [his] criminal trial." *Glenn v. Wynder*, 743 F.3d 402, 407 (3d Cir. 2014) (quoting *Riggins v. Nevada*, 504 U.S. 127, 149 (1992) (Thomas, J. dissenting)). "The Supreme Court has 'defined the category of infractions that violate 'fundamental fairness' very narrowly, based on the recognition that, beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation.'" *Id.* (quoting *Medina v. California*, 505 U.S. 437, 443 (1992)). "In order to satisfy due process, [Petitioner's] trial must have been fair; it need not have been perfect." *Id.* (citing *United States v. Hasting*, 461 U.S. 499, 508 (1983)). Thus, a Due Process violation will only occur in the context of a state court evidentiary ruling when that ruling was "so arbitrary or prejudicial that it rendered the trial fundamentally unfair." *Scott v. Bartkowski*, No. 11-3365, 2013 WL 4537651, at *9 (D.N.J. Aug. 27, 2013) (citing *Romano v. Oklahoma*, 512 U.S. 1, 12-13 (1994)).

The Supreme Court has never held that evidence of prior bad acts – even when they amount to crimes under state law – must be excluded from criminal trials, nor that a curative instruction or other restriction is per se required for a criminal conviction to survive constitutional scrutiny where such evidence is admitted. *See generally Estelle*, 502 U.S. 62; *Greer v. Miller*, 483 U.S. 756 (1987); *Spencer v. Texas*, 385 U.S. 554 (1967); *see also Minett v. Hendricks*, 135 F. App'x 547, 553 (2005). As with most state court evidentiary decisions, the admission of such evidence will only warrant habeas relief where the admission of the evidence was so unduly prejudicial that it rendered the petitioner's trial fundamentally unfair. *Glenn*, 743 F.3d at 407; *Minett*, 135 F. App'x at 553.

Petitioner cannot show that the admission into evidence of his prior threats and interactions with the victim prejudiced him in this matter, nor that the admission of that evidence rendered his trial fundamentally unfair. As the Appellate Division observed both on direct appeal and during

8

PCR proceedings, the evidence of Petitioner's guilt produced at trial in this matter was truly overwhelming. Petitioner was, essentially, caught red handed, standing over the wounded victim by the police, his DNA was present on the knife used in the attack, and it was clear to officers arriving on the scene that Petitioner had attempted to douse the victim's home and clothing in a flammable liquid. The victim's wounds were serious, and Petitioner's culpability for those wounds was abundantly clear. Thus, it is clear that even if this evidence had not been admitted, there is no likelihood that the outcome of the trial would have differed, and it is clear that the admission of this evidence, even without a curative instruction, did not render Petitioner's trial fundamentally unfair. The Appellate Division's rulings were neither contrary to nor an unreasonable application of federal law, and this ground serves as no basis for habeas relief.

### C. Ineffective Assistance of Counsel

In his remaining claims, Petitioner asserts that he suffered from ineffective assistance of counsel.[1] The standard applicable to claims of ineffective assistance of counsel is well established:

> [c]laims of ineffective assistance are governed by the two-prong test set forth in the Supreme Court's opinion in *Strickland v. Washington*, 466 U.S. 668 (1984). To make out such a claim under *Strickland*, a petitioner must first show that "counsel's performance was deficient. This requires [the petitioner to show] that counsel

---

[1] Respondents assert that certain portions of Petitioner's ineffective assistance of counsel claims were not properly and fully exhausted during PCR proceedings in the state courts. To the extent that any claim discussed in this opinion was not properly exhausted, this Court denies Petitioner's claims on the merits notwithstanding exhaustion. *See* 28 U.S.C. § 2254(b). Likewise, to the extent that the claims in question are instead procedurally defaulted insomuch as Petitioner may now be barred from returning to state court to raise them in a new petition, *See, e.g., O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999) (claims which would otherwise be unexhausted which are subject to a clear state procedural bar "result[s] in a procedural default of those claims"), this Court denies those claims on the merits notwithstanding Petitioner's procedural default of those claims. The Court notes, however, that to the extent Petitioner's claims are defaulted rather than unexhausted, Petitioner has utterly failed to show cause or prejudice sufficient to warrant excusing his default, and his defaulted claims are subject to rejection for this reason as well. *See, e.g., Dretke v. Haley*, 541 U.S. 386, 392-93 (2004).

> made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687; *see also United States v. Shedrick*, 493 F.3d 292, 299 (3d Cir. 2007). To succeed on an ineffective assistance claim, a petitioner must also show that counsel's allegedly deficient performance prejudiced his defense such that the petitioner was "deprive[d] of a fair trial . . . whose result is reliable." *Strickland*, 466 U.S. at 687; *Shedrick*, 493 F.3d at 299.
>
> In evaluating whether counsel was deficient, the "proper standard for attorney performance is that of 'reasonably effective assistance.'" *Jacobs v. Horn*, 395 F.3d 92, 102 (3d Cir. 2005). A petitioner asserting ineffective assistance must therefore show that counsel's representation "fell below an objective standard of reasonableness" under the circumstances. *Id.* The reasonableness of counsel's representation must be determined based on the particular facts of a petitioner's case, viewed as of the time of the challenged conduct of counsel. *Id.* In scrutinizing counsel's performance, courts "must be highly deferential . . . a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.
>
> Even where a petitioner is able to show that counsel's representation was deficient, he must still affirmatively demonstrate that counsel's deficient performance prejudiced the petitioner's defense. *Id.* at 692-93. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. The petitioner must demonstrate that "there is a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694; *see also Shedrick*, 493 F.3d at 299. Where a "petition contains no factual matter regarding *Strickland's* prejudice prong, and [only provides] . . . unadorned legal conclusion[s] . . . without supporting factual allegations," that petition is insufficient to warrant an evidentiary hearing, and the petitioner has not shown his entitlement to habeas relief. *See Palmer v. Hendricks*, 592 F.3d 386, 395 (3d Cir. 2010). "Because failure to satisfy either prong defeats an ineffective assistance claim, and because it is preferable to avoid passing judgment on counsel's performance when possible, [*Strickland*, 466 U.S. at 697-98]," courts should address the prejudice prong first where it is dispositive of a petitioner's claims. *United States v. Cross*, 308 F.3d 308, 315 (3d Cir. 2002).

*Judge v. United States*, 119 F. Supp. 3d 270, 280-81 (D.N.J. 2015).

In his first series of ineffective assistance claims, Petitioner asserts that counsel proved ineffective in failing to properly and strenuously object to the admitted prior bad acts evidence and in failing to request a curative jury instruction as to those prior bad acts, resulting in his appellate claim being subject to invited error or plain error analysis on direct appeal.[2] To the extent Plaintiff raised these claims in his PCR appeal, the Appellate Division rejected them, finding that Petitioner could not possibly show prejudice in light of the overwhelming evidence of his guilt presented at trial. That determination was neither contrary to nor an unreasonable application of *Strickland*. The evidence at Petitioner's trial, as discussed above, was truly overwhelming. As Petitioner was caught in the act of violently assaulting his estranged wife after having spread flammable liquid through her house and on her clothes, and the weapons he used – a knife and a cleaver – were recovered by the police who found him at the scene alongside his severely wounded victim, the failure to more strenuously seek to exclude the prior bad acts evidence and the failure to seek a limiting instruction could not have possibly prejudiced Petitioner's defense. There is simply no reasonable likelihood that the outcome of Petitioner's trial would have been different had this evidence been excluded or had a limiting instruction been given. Thus, these claims are without merit and provide no basis for habeas relief.

Petitioner next contends that counsel proved ineffective in failing to fully supply him with discovery prior to trial. Petitioner does not clearly identify what pieces of information he lacked, or how the lack of this unspecified discovery prejudiced his case at trial. The state trial level PCR court rejected this claim, finding that Petitioner had provided only a bald assertion and had not shown how he was prejudiced by this issue. As Petitioner both in PCR proceedings and before this Court has failed to identify what discovery he did not receive, or how he was prejudiced by

---

[2] Petitioner raises this claim in three of his grounds for relief, Grounds Three, Four, and Five, in slightly different forms.

11

the failure to receive this unspecified discovery, he cannot now show that he was prejudiced by counsel's alleged failings. Indeed, in light of the truly overwhelming evidence of Petitioner's guilt and his having been caught by police at the scene of the crime, this Court is hard pressed to imagine any discovery which could have changed the outcome of Petitioner's trial in this matter. In any event, because Petitioner has not stated, let alone shown, that he was not provided specific items in discovery or how he was prejudiced by that lack, he cannot show that counsel was ineffective because he cannot possibly show prejudice. Therefore, this ground fails to establish a basis for habeas relief and is denied on the merits.

Petitioner next argues that counsel proved ineffective in failing to fully advise him as to his sentencing exposure to fully permit him to evaluate his decision to proceed to trial. The PCR trial court rejected this claim, finding that Petitioner was specifically advised of his sentencing exposure during pre-trial conferences and was directly informed by the trial court that, if he proceeded to trial and was convicted, he faced a maximum sentence exposure of life imprisonment, and that Petitioner therefore was aware of his exposure regardless of counsel's alleged failure. Because the record clearly shows that Petitioner was aware of his maximum sentencing exposure – life imprisonment – and that this discussion with the trial court occurred prior to the expiration of the State's final plea offer of 20 years' imprisonment, (*see* ECF No. 7-50 at 3-4), he cannot show that he was prejudiced by counsel's alleged failure to repeat to him this same information. Petitioner cannot show prejudice, and thus fails to establish ineffective assistance of counsel.

In his final claim, Petitioner claims that, even if each of his assertions of error do not individually warrant habeas relief, they cumulatively serve as a basis for relief. The PCR trial court rejected this claim, finding that Petitioner's claims of error cumulatively failed to provide a basis for relief in light of the overwhelming evidence of Petitioner's guilt. Having reviewed Petitioner's claims, this Court finds that they fare no better in the aggregate than they do

individually. Petitioner has utterly failed to show that he was prejudiced by any of counsel's alleged errors or by the trial court's evidentiary rulings in light of the clear and overwhelming evidence of his guilt produced at trial, and has failed to show that the trial court erred in its rulings as to his request for self-representation. Thus, Petitioner fails to show cumulative error sufficient to warrant habeas relief, and his cumulative error claim is without merit and provides no basis for habeas relief. *See, e.g., Albrecht v. Horn*, 485 F.3d 103, 139 (3d Cir. 2007) (cumulative error analysis merely aggregates claims together will only warrant relief where the claims together were not harmless and caused actual prejudice), *cert. denied*, 552 U.S. 1108 (2008).

Because, all of Petitioner's claims shall be denied, Petitioner's habeas petition is denied in its entirety. Likewise, because all of Petitioner's claims are without merit, his motion seeking a stay (ECF No. 10) must also be denied as any unexhausted claims contained in his current habeas petition are without merit and therefore cannot serve as the basis for a stay. *See Rhines v. Weber*, 544 U.S. 269, 274-78 (2005).

## IV.   CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), a petitioner may not appeal from a final order in a habeas proceeding where that petitioner's detention arises out of his state court conviction unless he has "made a substantial showing of the denial of a constitutional right." "[A petitioner] satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude [that] the issues presented here are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Because Petitioner's habeas claims are without merit for the reasons set forth above, he has failed to make a substantial showing of a denial of a constitutional right, and his petition is not

adequate to receive encouragement to proceed further. This Court therefore denies Petitioner a certificate of appealability.

## V.  CONCLUSION

In conclusion, Petitioner's habeas petition (ECF No. 1) is **DENIED**, Petitioner is **DENIED** a certificate of appealability, and Petitioner's motion seeking a stay (ECF No. 10) is **DENIED**. An order consistent with this opinion shall be entered.

*Karen M. Williams*
Hon. Karen M. Williams,
United States District Judge

Type text here